718 So.2d 822 (1998)
Elmer FERRER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-0575.
District Court of Appeal of Florida, Fourth District.
June 19, 1998.
Order Denying Rehearing November 4, 1998.
*823 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
*824 FARMER, Judge.
Defendant assails his conviction because of the procedures employed by the trial judge in jury selection. The jury was picked for his case as part of a "consolidated" jury selection with two other cases. That means that the jurors for all three cases were selected from the same group of prospective jurors. The lawyers for the first case would question the prospective jurors and then make their peremptory and cause challenges, and that jury would be sworn. Then the lawyers on the second case would question and make their challenges, and so on.
The parties began this process on the first case shortly after 1:00 p.m. and continued throughout the afternoon and evening. Jury selection for this case followed the two earlier cases. By the time this case was reached, the hour neared 7:30 p.m. Defendant's lawyer objected to beginning jury selection at this late hour. When the trial judge insisted on continuing, the following ensued:
COUNSEL: I'm going to move to withdraw. I am not asking these jurors questions. I'm tired. I have been here since 8:00 this morning. I went through your docket. I got a quick break. I haveI cannot go any further. I am totally exhausted. I have been up since 6:00. I have been in this courtroom for 6 hours now, and I'm totally tired. I cannot question these people. I am moving to dismiss this panel.
I would not accept any of these on a good day. These people have been rejected by two different trials. Four attorneys have rejected them. They have been twice rejected. There is not one juror here I would take voluntarily. Now the court can tell us not to get us a new panel. But the main thing, I can't question these people right now. My mind is like totally out [of] here. I have been [an] attorney [for] 24 years. I am exhausted. I am getting up in age, 51 years old; I can't go any further. I'm not effective counsel for this man. He is entitled to better than me, maybe.
COURT: I know you will do better. Your motion to strike the panel is denied. Your motion to withdraw is denied. Your motion to continue is denied, and we will be doing jury selection. I'm sure you will do the best questioning.
COUNSEL: I am not questioning them.
COURT: You are not questioning them[?] You better clear it with your client that all the questions have been done by the other three defense attorneys is sufficient and if he agrees to that strategy and put it on the record, if he doesn't want to do a voir dire
COUNSEL: [Is] the Court ordering me to do a voir dire?
COURT: I'm ordering you to represent the client zealously, and if you don't want more questions
COUNSEL: I don't understand why we are here at 7:15 and to continue.
COURT: Because I say we are going to continue. Anything further?
COUNSEL: No, I'll do whatever the Court orders.
Voir dire then followed. Defense counsel was often unclear, sometimes abrasive and antagonistic; he rambled and did not always seem to make sense. Selection ended at 8:25. Defendant was convicted by the jury so selected.
We note that there is nothing in the record contradicting defense counsel's description of his services earlier in the day, or the nature and extent of his day's workload. Similarly lacking is anything intimating that his fatigue was feigned, or his contentions pretextual. The record does affirmatively show that the hour was as indicated and that his performance during selection was uncharacteristically substandard.
Similarly we emphasize that the trial judge did not identify any circumstance or state any reasons for continuing so late into the evening hours. Nor does the record itself suggest any justification unarticulated by the trial judge but which might nevertheless have underlain his decision. The absence of circumstances and grounds leads us to conclude from this and other cases that it is routine procedure to hold trial proceedings into the evening hours by some trial judges within this district.
*825 Defendant's basic contention on appeal is that this procedure denied him a fair trial. He recognizes however, as he must, that in the absence of a controlling statute or overriding rule of procedure, trial judges have broad discretion in the conduct of trials. Galbut v. Garfinkl, 340 So.2d 470 (Fla.1976). The considerable latitude in regulating trial proceedings given to judges arises from their obligation to administer the law fairly and impartially between the parties. City of Miami v. Williams, 40 So.2d 205 (Fla.1949). The times and circumstances of holding court are among those matters peculiarly within the exclusive control of the trial judge on the scene. Consequently appellate courts will not interfere with the trial judge's management of the process of conducting trials, save in the rare instances where such discretion is abused.
There are many important stages in the course of a trial, and jury selection is certainly one of them. All parties are entitled to reasonable voir dire examination of prospective jurors by counsel. Fla. R.Crim. P. 3.300(b) ("Counsel for both the state and the defendant shall have the right to examine jurors orally on their voir dire."). The trial court's discretion in the supervision of oral examination of prospective jurors is therefore broad.
Like all such judicial discretion, however, it is not unlimited. Williams v. State, 424 So.2d 148 (Fla. 5th DCA 1982); see also Parce v. Byrd, 533 So.2d 812, 814 (Fla. 5th DCA 1988), rev. denied, 542 So.2d 988 (Fla. 1989) ("[Judicial discretion] is not a naked right to choose between alternatives. There must be a sound and logically valid reason for the choice made. If a trial court's exercise of discretion is upheld whichever choice is made merely because it is not shown to be wrong, and there is no valid reason to support the choice made, then the choice made may just as well have been decided by the toss of a coin. In such case there would be no certainty in the law and no guidance to bench or bar."), and State ex rel. Mitchell v. Walker, 294 So.2d 124, 126 (Fla. 2d DCA 1974). Because the purpose of such examination is to ensure a fair trial, unreasonable limitations and restrictions on juror examination can be considered an abuse of discretion. See Loftin v. Wilson, 67 So.2d 185, 192 (Fla. 1953) (quoting Pearcy v. Michigan Mut. Life Ins. Co., 111 Ind. 59, 12 N.E. 98, 99 (1887)); Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996); O'Hara v. State, 642 So.2d 592 (Fla. 4th DCA 1994); Pineda v. State, 571 So.2d 105 (Fla. 3d DCA 1990).
We conclude that the procedures used by this trial judge unreasonably inhibited the ability of counsel to engage in meaningful voir dire examination of prospective jurors. Beginning the process of choosing jurors at 7:30 in the evening hours, after a party's lawyer has already worked a full day in court representing various clients, is likely to call upon reserves of energy, insight and diligence already spent. A lawyer whose resources are thus depleted cannot be presumed to be able to operate at the ordinary skills level. And even if that lawyer is nonetheless able to perform with some competence, fatigue can impel the lawyer into subconsciously hurrying the process. In either event, the effect is to deprive the client of the lawyer's skill, energy and dedication. For that reason, we find an abuse of discretion in beginning jury selection for this case at that time over the objection of the party, and the concerned party has shown some prejudice. Our holding is therefore limited to the circumstances here present in which the defendant has shown a proper and timely objection, the absence of any record circumstances for continuing so late, and the objecting party has demonstrated some prejudice.
Because the procedures employed in this case may be routinely used by other trial judges within this district, we think it important to state in dicta some guidance to the trial judges in this district on the exercise of their discretion on this important matter of continuing court proceedings into the late evening hours. In doing so we wish to stress that we state no categorical rules here. That is to say, we should not be understood as stating an imperative that it is always an abuse of discretion to hold court proceedings late in the evening hours. Instead we provide mere guidance and some observations for the convenience of our trial judges.
*826 The routine conduct of jury trial proceedings beyond ordinary hours well into the evening is ill advised, whether the case is criminal or civil. In addition to wearing out the lawyers, these procedures unreasonably and unnecessarily exhaust the jurors and are unfair to them. Jurors have no choice about participation in the process. They have been summoned and by law they are compelled to attend. They have not been voluntarily hired, as the lawyer has, and cannot thus pick and choose their cases and the circumstances under which they will work. Therefore trial judges should not routinely burden the compelled discharge of this civic duty by requiring jurors to participate beyond the conventional ending hour.
Of course, this technique also has the potential effect, as indicated in this case, of denying a party effective or meaningful representation by counsel. As with jurors, lawyers have limits and cannot be expected to routinely work trial days that extend well beyond ordinary ending time and into the evening.[1] Hence in a criminal case, it could lead to a denial of the effective assistance of counsel as required by the Sixth Amendment. In a civil case the effect, though not of a constitutional nature, could just as likely erode the fundamental right to have worthwhile representation by the lawyer. In either event, the conclusion is that exhausting counsel by such proceedings deprives the party of the right to have a lawyer's skillful service.
Most of the people involved in the proceeding do have personal lives with other important responsibilities. Jurors may have young children who simply must be attended to by a specific time in the late afternoon or early evening. They may have aged parents unable to fend for themselves, whose care during the work day terminates at specified times. The courts as an institution have no need or desire to be indifferent to these considerations and ignore the legitimate concerns of people with such responsibilities. What constitutes the usual ending hour of daily courtroom proceedings can be a matter of local custom and other factors. Whether custom sets the daily ending hour at 5:30 or 6:00, or some other time, prospective jurors as well as the parties and their counsel should be consulted and so informed by the trial judge before jury selection commences. The normal hours should be, and properly are by this opinion, left to the trial courts themselves.
After considering the needs of the jurors, parties and counsel before jury selection begins, the trial judge can adjust the usual beginning and ending times of trial days to meet the needs of the various persons involved in the case. While we do not suggest an inflexible rule, it should be the practice of trial judges not to continue beyond this agreed hour unless some particular circumstance indicates the need and advisability of doing so. Examples of such reasons might be (among others) to finish with a non-resident witness, or to be able to send the case to the jury before the end of the time allotted for the trial. Even then, the trial judge should always consult again with the jurors and parties and counsel as early as possible in the trial as to the proposed extension of the ending time for a particular day and make whatever adjustments seem advisable to meet the personal obligations of these affected people.
Concluding that the jury selection procedure in this case deprived defendant of a fair trial, we remand the case for a new trial.
REVERSED.
GUNTHER and KLEIN, JJ., concur.

*827 CORRECTED OPINION

ON MOTION FOR REHEARING
FARMER, Judge.
We withdraw our original opinion on rehearing and substitute the following in its place.[1] In doing so, we expressly retract any criticism of counsel for the state.
In its motion for rehearing, the state calls to our attention the following comments by the trial judge at the time the jury was discharged:
`I have been a circuit court judge almost eight years. I never kept a jury here until 8:15 before. That's the longest we ever worked selecting a jury.... I could kind of complain to you. I took over a new division two weeks ago. [W]e picked a jury ... to try a case five years old. That's why we are working so hard to make up the backlog for very old cases that have been around a long time.'" [emphasis supplied]
We emphasize that these remarks were not made at the time of jury selection; rather they were made only after the trial judge had already compelled those involved in the trial to work involuntarily late into the previous evening. Rather, they were made only after the trial was finished and the case had been submitted to the jury. Thus the remarks were not made as part of a colloquy to ascertain whether those involved in the trial were available to work by choice beyond the customary adjournment hour. In fact, as our opinion makes clear, one of the lawyers made a good faith objection with strong reasons in support, and one of the jurors similarly objected to proceeding at the late hour.
Regardless of their timing, however, we deem them insufficient to justify what the trial judge did. Our opinion endeavored to make clear that citizen jurorsas well as lawyers, parties and other court personnel should not be forced over their objection to bear the brunt of this kind of docket control by being made to work without prior notice and involuntarily long past the expected hour of daily adjournment and thereby incur the unplanned disruption of their own lives and personal duties. If there are not enough courtrooms or judges, citizens summoned for jury duty can hardly be expected to do what the system is not configured to do.
MOTION FOR REHEARING DENIED.
GUNTHER and KLEIN, JJ., concur.
NOTES
[1] Most trial lawyers have a desperate need for the hours after court concludes for the day. For one, they may be forced to address matters occurring during the trial and prepare for the next day's trial activities. Yet they may also require the time to deal with emergencies affecting other clients. And, dare we say, they may simply need such hours for their personal, non-professional lives.
[1] In withdrawing our criticism of counsel for the state, we have accepted her explanation of the argument made in her motion for rehearing.