751 So.2d 633 (1999)
Sergio SOTO, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2527.
District Court of Appeal of Florida, Fourth District.
December 15, 1999.
Rehearing Denied January 28, 2000.
*635 John A. Garcia of John A. Garcia, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, C.J.
In an appeal from his conviction of first degree murder with a firearm, and five other included charges, for which he was sentenced to six consecutive life sentences, appellant Sergio Soto raises seven issues asserting that the trial court erred in: (1) failing to suppress Soto's confession; (2) denying his repeated motions to discharge counsel; (3) denying his motion to recuse; (4) denying appellant's challenge to the jury based on State v. Neil, 457 So.2d 481 (Fla.1984); (5) denying defense counsel's request for additional peremptory challenges; (6) denying his motion for mistrial following the state's violation of a stipulated motion in limine; and (7) in presenting an ultimatum to the defendant that he must either testify or waive his right and rest his case. We conclude that none of the issues raises a reversible error and affirm.
One evening in October 1995, the victim, Rafael Costa was returning from a bible study class and stopped for gas. Appellant, and several acquaintances, Jason Diaz, Mark Bonham, and Ernesto Brady, were stopped at a different gas station at the same intersection. Wanting to steal Costa's car, Soto and co-defendant Diaz ran across the street to where the victim was fueling his car. Soto and Diaz abducted Costa and left in his car. They then took Costa to several automatic teller machines where he was forced to attempt to withdraw cash. When they failed to get any money, Diaz beat Costa with his gun until the victim was unconscious. Approximately forty-five minutes later, Soto and Diaz met up with Bonham and Brady at another store. At that point, Bonham departed, and Soto, Diaz, and Brady drove off with the victim in the back seat. After *636 reaching a secluded area, Soto, who was driving, stopped the car, and Diaz and Brady then dragged Costa out of the car. According to Soto, Diaz and Brady then shot the victim several times and stole several items out of the trunk. At trial, Soto claimed that Diaz forced him to participate, although the state proved that Soto had held a gun to Costa's head during the ordeal.
Soto confessed his involvement to the police and at trial moved to suppress his confession, alleging that he did not waive his Miranda rights because he did not understand them as delivered in English. Whether or not he understood English is a question of historical fact upon which the trial court heard ample evidence. Appellate courts give great deference to the trial court's findings of historical facts in determining a motion to suppress based upon the Fourth Amendment. See Ornelas v. United States, 517 U.S. 690, 698-99, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). In this case, the trial court determined that Soto adequately understood the warnings, given his prior involvement with the law, which included communications with the police in English, the fact that he had attended English speaking schools since he was eleven years of age, and a review of his conversation on the tape itself. Thus, we find that the state produced sufficient proof to establish a knowledgeable waiver. Cf. Balthazar v. State, 549 So.2d 661 (Fla.1989).
In his second issue, Soto complains that the trial court erred in denying his repeated requests to discharge his counsel. A trial court's ruling denying a motion to discharge counsel will not be reversed absent an abuse of discretion. See Anderson v. State, 439 So.2d 961, 962 (Fla. 4th DCA 1983).
[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute. If the defendant continues to demand a dismissal of his court appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation by court appointed counsel.
Nelson v. State, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973) (citations omitted); see also Graves v. State, 642 So.2d 142, 143 (Fla. 4th DCA 1994).
In his first motion to discharge, Soto alleged that his lead trial counsel failed to communicate with him and visit him in jail. However, when his motion was heard by the trial court, his counsel testified that she had visited him and spoken with him on the phone. In addition, a private investigator assigned to the case also met with Soto in jail. Mere failure to make what a defendant considers adequate visits to him in jail is not an issue of competency. See Kenney v. State, 611 So.2d 575, 575 (Fla. 1st DCA 1992).
Soto also complained that his attorney had failed to file any motions. The record belies this allegation, as there are demands for discovery, motions to appoint *637 co-counsel, and motions to appoint experts. Moreover, at the hearing, defense counsel stated that she had not filed some motions because it was too early in the case. This is clearly a question of trial strategy, which ultimately resides with counsel. See Sanborn v. State, 474 So.2d 309, 312 (Fla. 3d DCA 1985). As there was no showing at all of incompetency of counsel, the trial court properly denied the motion.
At Soto's second motion to discharge counsel, he complained again that counsel was not adequately preparing his case. However, he could not be specific as to what he felt his counsel should be doing. With only vague and conclusory allegations upon which to base its decision, the trial court did not err in denying this second motion. See Lowe v. State, 650 So.2d 969, 975 (Fla.1994), cert. denied, 516 U.S. 887, 116 S.Ct. 230, 133 L.Ed.2d 159 (1995) ("[A]s a practical matter, a trial judge's inquiry into a defendant's complaints of incompetence of counsel can be only as specific and meaningful as the defendant's complaint."). Moreover, his generalized claim that he could not get along with his counsel is insufficient to warrant counsel's discharge. See Weems v. State, 645 So.2d 1098, 1099 (Fla. 4th DCA 1994), rev. denied, 654 So.2d 920 (Fla.1995); Johnson v. State, 560 So.2d 1239, 1240 (Fla. 1st DCA 1990).
Soto not only tried to get new counsel, he also moved to recuse the trial judge. He contends that the trial court judge should have recused himself after stating at a hearing, where it was apparent that there was a mix-up as to the scheduling of motions, the following: "[A]nd I would not do that as a judge in a capital case where I am convinced that the Supreme Court will be reviewing anything I do." Soto argues that the remark shows that the trial judge was biased and convinced of Soto's guilt and the probability that the death penalty would be meted out. When the trial judge's comments are taken in the context of the hearing, however, it is clear that the judge was simply concerned that no errors would be made, not that he had in any way prejudged the case. In determining whether a motion to disqualify is legally sufficient, the court must look to see "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983). Given the context of the remarks, they would not give a reasonable person that fear. As to the other reasons Soto gave for requesting the recusal of the judge, he focuses on the trial court's rulings on motions adverse to his position. Adverse rulings, however, will not warrant a judge's disqualification. See Rivera v. State, 717 So.2d 477, 481 (Fla.1998); Robbie v. Robbie, 726 So.2d 817, 822 (Fla. 4th DCA 1999). The motion to recuse was properly denied.
At trial, Soto complained that the state was allowed to exercise a peremptory challenge against a minority juror. When the state exercised a peremptory challenge against the juror, the defense objected, and the judge followed the procedure set forth in Melbourne v. State, 679 So.2d 759 (Fla.1996), and asked the state for a reason for the challenge. The state attorney responded that she was concerned with the juror based upon her disagreement with the principal theory discussed during voir dire and that she did not seem to understand the concept of reasonable doubt. The court found this to be a race-neutral reason, as do we. See Kelly v. State, 689 So.2d 1262, 1263 (Fla. 3d DCA 1997) (uneasiness with a legal theory is a raceneutral reason for a strike). Although the minority juror ultimately stated that she would follow the judge's instructions, a juror's statement that he or she will follow the law is not conclusive on the issue. See id. In the present case, the juror quite clearly disagreed with the principal theory. On that basis alone, the state had a raceneutral reason for its peremptory challenge.
*638 We also disagree that the state's strike was racially motivated because it left another juror on the jury who had also disagreed about the principal theory. First, whether other jurors who express similar misgivings and are not excused is merely one circumstance that the trial court should consider in determining the genuineness of the reason given. Melbourne establishes a totality of circumstances approach, and we are cautioned to give the trial court broad discretion in such matters. See 679 So.2d at 764-65. Moreover, in the instant case we do not find that the unchallenged juror was in the same position as the minority juror. A review of the record shows that while the minority juror understood the principal theory and disagreed with it, the unchallenged juror did not understand the theory, but once it was explained to him, he stated that he would not have a problem convicting someone under that theory. We therefore find no abuse of discretion.
We find Soto's fifth point, that the trial court failed to grant additional peremptory challenges, to be completely without merit. The trial court did in fact grant the defense additional peremptory challenges. After the defense exercised these, he asked for more, pointing to a juror who was concerned about child care as an objectionable juror whom the defense would have struck had it been granted more challenges. The fact that a juror expresses concern for his or her personal life while the trial is going on is insufficient to show that the juror is so objectionable as to render a denial of additional peremptory challenges to remove that juror reversible error. There is no showing of any abuse of discretion. See Farina v. State, 679 So.2d 1151, 1154 (Fla.1996), receded from on other grounds by Franqui v. State, 699 So.2d 1312 (Fla.1997).
Soto also complains that the trial court should have granted a mistrial when a witness for the state testified that when Soto was arrested the police found a shotgun in his home, in violation of a prior stipulation by the state that it would not mention the gun. We analogize this brief mention of a shotgun to Cole v. State, 701 So.2d 845, 853 (Fla.1997), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998), where the supreme court upheld the denial of a motion for mistrial when a witness referred to the defendant's criminal history, finding that the remark was "isolated and inadvertent and was not focused upon." Similarly, in the instant case the comment was isolated and inadvertent, and at no other point during the trial was the shotgun mentioned. Even if there had been other references, the mentioning of the shotgun was harmless. The evidence established that a .38 semiautomatic pistol, not a shotgun, was used in the killing. There was no evidence that a shotgun was present at any time during the incident.
As his final point, Soto makes the meritless argument that the trial court erred in presenting him with an ultimatum regarding when to testify. After the state rested and motions were made the defense attorney stated that she would present witnesses. The court asked if Soto was planning to testify, to which the defense responded that the decision had not yet been made. The court acknowledged defense counsel's response and then instructed that the decision needed to be made before the jury returned from their break in thirty minutes. Defense counsel reminded the court that it had other witnesses, and Soto could wait until after they testified to determine whether he would take the stand. When the jury came back, the defense asked for an additional twenty minutes to procure other witnesses. The court noted that Soto was a witness and could testify, but ultimately the court granted an additional thirty minute recess. At that point, the court stated, "[I]f Mr. Soto wishes to testify, that's when he will take the stand, unless the Defense has another witness." After the recess, the defense was unable to obtain any witnesses, and Soto then decided to take the stand.
Trial courts have broad discretion regarding the procedural conduct of trials. *639 See Ferrer v. State, 718 So.2d 822, 825 (Fla.4th DCA), rev. denied, 728 So.2d 204 (Fla.1998). This trial judge did not unduly restrict the defense. The state had rested, and the defense had to put on its case or rest. The trial court gave the defense all of the time it had requested to procure witnesses, which it did not do. The trial judge was not required to adjourn the trial indefinitely, waiting for Soto to decide whether to testify. Soto relies on Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), which holds that a state rule requiring the defendant to be the first witness in the defense case, if the defendant decides to take the stand at all, impermissibly infringes on the defendant's constitutional right to testify. That case, however, is inapplicable to the facts of this case. The trial judge in the instant case simply told the defense, when it could produce no other witnesses, that if the defendant was going to testify, he would have to take the stand. Otherwise, there were no other witnesses available. There is no rule which requires the trial court to postpone the trial indefinitely to accommodate a defendant's indecision regarding whether he will testify.
Affirmed.
POLEN and GROSS, JJ., concur.