STONE, J.
We affirm an order granting a motion to suppress two statements made by C.F., a juvenile; one at his home and another at the sheriffs office. We also affirm the court’s suppression of physical evidence, a BB gun, retrieved at C.F.’s home, following his initial statement.
At the suppression hearing, the deputy/witnesses testified that the sheriffs office received information that C.F. was involved in shooting incidents. They stated that they first contacted and arrested C.F.’s co-defendant, Pablo, who admitted that he had been involved in shooting at moving vehicles. He told the police that he had shot at one and that the boy next door, C.F., was also involved. He further advised them that C.F. had the gun used in the crimes.
After placing Pablo in custody, the deputies went to C.F.’s home. There, Sergeant Hubrig asked C.F.’s parents permission to speak to him, at which time the parents invited him into their home. Sergeant Hu-brig testified that while he considered C.F. a suspect among several children under consideration, the child was not under arrest, was free to leave, and was neither threatened nor coerced. Hubrig also stated that he did not advise C.F. of his Miranda[1] rights because he did not believe he had probable cause to arrest.
At first, C.F. denied he was involved, at which point Sergeant Hubrig testified that the parents stressed honesty and, eventually, C.F. admitted that he had shot at two vehicles and, further, admitted that the gun was in his room behind a dresser. C.F.’s parents gave Sergeant Hubrig permission to retrieve the gun, whereupon C.F. was placed in custody.
Detective Martin testified that he read C.F. his Miranda rights at the police station and took a statement from him at that time. Martin could not recall, however, whether he had obtained a written waiver from C.F.; furthermore, the state was unable to produce a written waiver.
The trial court granted C.F.’s motion to suppress the statements given at C.F.’s home and at the police station, and the weapon found in C.F.’s room.
On appeal, the state argues that the trial court erred in granting the motion because the trial court’s order is not supported by competent, substantial evidence. The state asserts, as to the first statement made by C.F. to Officer Hubrig, C.F. was not in custody; thus, Miranda warnings were not required. As to his statements made at the police station, the state contends that C.F. was advised of his rights and voluntarily waived them. Further, the state maintains that the trial court erred in suppressing the gun, because merely violating Miranda, without more, does not trigger application of an exclusionary rule, reasoning that where there is no Fourth *754 Amendment violation, there is no justification for invocation of the exclusionary rule.
Review of a Florida motion to suppress is a mixed question of law and fact. See Perez v. State, 620 So.2d 1256 (Fla.1993). However, the standard of review for the trial judge’s application of the law to the factual findings is de novo. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Under de novo review, the reviewing court defers to the factual findings of the trial judge that are supported by competent, substantial evidence. See Harris v. State, 761 So.2d 1186 (Fla. 4th DCA 2000).
As to C.F.’s first statement, the question of whether a suspect is in custody is a mixed question of law and fact. See Ramirez v. State, 739 So.2d 568, 574 (Fla.1999), cert. denied, Florida v. Ramirez, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). Four factors guide the determination of whether a suspect is in custody: “(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his guilt; and (4) whether the suspect is informed that he or she is free to leave.... ” Mansfield v. State, 758 So.2d 636, 644 (Fla.2000). Ultimately, the inquiry focuses on “whether ‘a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.’ ” Id.; see also Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (definition of interrogation focuses on “the perceptions of the suspect, rather than the intent of the police”).
In State v. J.Y., 623 So.2d 1232 (Fla. 3d DCA 1993), a police officer traced the tag number of a vehicle driven by an unknown perpetrator to a particular residence. On arrival at the residence, the police identified the car and the tag number; when the juvenile suspect came out, they determined that he matched the physical description provided by the victim. The suspect, who was not advised of his Miranda rights, initially denied his involvement, but eventually made incriminating statements when the trooper refused to accept his denial. The court held that, based upon: (1) the nature of the questioning; (2) the information the police had obtained; (3) the juvenile suspect’s age; and (4) the type of questions being asked, it was clear that a reasonable person in J.Y.’s position would have believed that he was, in effect, under arrest for the felony he was being question about, especially when his initial denial of any criminal involvement was not accepted by the officers. See id. As stated by the court:
Plainly, when, as here, law enforcement officers effect a de facto arrest of a suspect at a suspect’s home and thereafter interrogate the suspect at that location, they are not exempt from warning the suspect of his/her Miranda rights prior to interrogation merely because they delayed a formal arrest of the suspect until after the questioning was completed, especially where they had ample probable cause to arrest before any questioning began and would not have allowed the suspect to leave during questioning in any event.
J.Y., 623 So.2d at 1234 (citing Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969)).
As in J.Y., the nature of the questioning by Sergeant Hubrig, coupled with the information supplied by Pablo, and the continued skeptical questioning of C.F. after his initial denial, support a conclusion by the trial court that this was more than just an officer’s pursuit of a tip or statement of a co-defendant. See Ramirez, 739 So.2d at 573. Therefore, the trial court did not err in determining that the interrogation was custodial and, consequently, required Miranda warnings.
*755 The state further asserts that, even assuming that C.F.’s statement made in his home was obtained in violation of Miranda, the court erred in suppressing the statement given at the police station.
Although there is nothing in the record to directly contradict the detective’s statement that C.F. had been fully advised of his rights, the court was free to disbelieve this testimony, as the detective could not recall some of the details surrounding the interview, such as why no written form was used, and whether he had interviewed C.F. off the record prior to his taped statement. We cannot say that such a finding is an abuse of the trial court’s discretion. We note that it is not asserted that the ruling as to the second statement was based on any taint carried over from the earlier interview at the house.
We turn finally to the BB gun which the trial court suppressed because the search was incident to the tainted interrogation at C.F.’s home. We recognize that there is nothing in the record, other than the failure to give Miranda warnings, that suggests that C.F.’s statement was anything other than freely and voluntarily given. C.F. relies on Alvarez v. State, 515 So.2d 286, 288 (Fla. 4th DCA 1987), in which we held that, where a Fourth Amendment violation is alleged as to consent, the state must not only prove consent, but must also show such consent was freely and voluntarily given. However, Alvarez dealt only with the Fourth Amendment issue of consent to search.
The United States Supreme Court has not clearly decided the question of whether physical evidence obtained as a result of an interrogation conducted without Miranda warnings is admissible. See Patterson v. United States, 485 U.S. 922, 108 S.Ct. 1093, 99 L.Ed.2d 255 (1988) (mem) (White and Brennan, JJ., dissenting). State and federal courts are divided on this question. Compare United States v. Barte, 868 F.2d 773 (5th Cir.), modified on other grounds, 878 F.2d 829 (5th Cir.1989) (“mere violation of Miranda’s, ‘prophylactic’ procedures does not trigger the fruit of the poisonous tree doctrine. The derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion.”); Wilson v. Zant, 249 Ga. 373, 290 S.E.2d 442 (1982); with United States v. Castellana, 488 F.2d 65, 65 (5th Cir.1974) (suppressing physical evidence obtained after Miranda violation); State v. Preston, 411 A.2d 402, 407-08 (Me.1980). Many courts, however, have noted the conflict, but have declined to take a position. See, e.g., United States v. Scalf, 708 F.2d 1540, 1545-46 (10th Cir.1983); United States v. Downing, 665 F.2d 404, 409, n. 5 (1st Cir.1981).
In State v. LeCroy, 435 So.2d 354 (Fla. 4th DCA 1983), this court held that the trial court properly suppressed a firearm recovered as a result of information learned in a statement obtained in violation of Miranda. See id. The decision was, however, quashed in part and affirmed in part in State v. LeCroy, 461 So.2d 88 (Fla.1985), where the supreme court remanded for a determination of whether the revolver would have been discovered under either independent source or inevitable discovery doctrines. See LeCroy, 461 So.2d at 91. Significantly, the supreme court did not find the gun admissible. We, therefore, deem our opinion in LeCroy, apparently approved by the supreme court, controlling, and conclude that it mandates suppression of the BB gun.
AFFIRMED.
DELL and FARMER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).