819 So.2d 154 (2002)
Henry ISOM, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-275.
District Court of Appeal of Florida, Second District.
April 17, 2002.
Rehearing Denied June 19, 2002.
James Marion Moorman, Public Defender, and Jean Marie Henne, Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Henry Isom appeals from his convictions for aggravated fleeing to elude a law enforcement officer, obstructing an officer without violence, two counts of leaving the scene of an accident, driving while license suspended, and failure to give information. He challenges the trial court's denial of a motion to suppress his confession. We reverse the judgment and direct the trial court to grant the motion to suppress.
Officer Vleck was involved in the search for two subjects who led police on a high-speed chase that ended when the suspects crashed their van and fled the scene on foot. While heading home after searching for the suspects, Officer Vleck noticed Isom walking on the interstate. Officer Vleck stopped Isom and told him that he fit the description of a suspect and that he would have to wait to speak to another officer. Officer Vleck also told Isom that he was not supposed to hitchhike on the highway. Isom was moved off the highway and was approached by Officer Thorpe who advised Isom that he was investigating an incident where a suspect had fled from a vehicle.
An audiotape of Isom's interview with Officer Thorpe revealed that after the officer advised Isom of the Miranda[1] warnings, the officer asked if he understood his rights, and Isom responded: "But I, I ain't did, I got, I need a lawyer cause I was *155 hitch-hiking?" The officer answered: "No. (Pause) Where were you coming from Henry?" The interview continued, and Isom initially denied any involvement with the crashed van. However, Officer Ross questioned Isom at the scene an hour later, and in this subsequent interview Isom admitted to being the driver.
On appeal, Isom argues that he was entitled to have his confession suppressed based on Officer Thorpe's response to his question regarding the need for counsel. Both Isom and the State agree that our resolution of this issue is governed by the supreme court's decision in Almeida v. State, 737 So.2d 520 (Fla.1999), although the parties disagree as to the application of Almeida under the present facts.
In Almeida, after an initial interview in which Almeida executed a written waiver of rights form, the questioning officer prepared to conduct a formal recorded session. Once the recording began, Almeida acknowledged that he had previously been read his rights and that he understood them. He was then asked, "Do you wish to speak to me now without an attorney present?" Almeida replied, "Well, what good is an attorney going to do?" The detective conducting the interview essentially ignored the suspect's question. The court stated:
[W]e hold that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwisei.e., to give an evasive answer, or to skip over the question, or to override or "steamroll" the suspectis to actively promote the very coercion that Traylor was intended to dispel. A suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely. Once the officer properly answers the question, the officer may then resume the interview.... Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State. See Traylor, 596 So.2d at 966.
Almeida, 737 So.2d at 525.
Following Almeida, the court clarified the duty of law enforcement in State v. Glatzmayer, 789 So.2d 297 (Fla.2001). In Glatzmayer, when the suspect asked the officers if they thought he should get a lawyer, the officers responded that it was his choice. The court concluded that suppression was not required and stated:
[N]othing in Almeida requires that law enforcement officers act as legal advisors or personal counselors for suspects. Such a task is properly left to defense counsel. To require officers to advise and counsel suspects would impinge on the officers' sworn duty to prevent and detect crime and enforce the laws of the state. All that is required of interrogating officers under Almeida and [State v.] Owen [, 696 So.2d 715 (Fla.1997) ] is that they be honest and fair when addressing a suspect's constitutional rights....
Id. at 305 (footnotes omitted).
In this case, when Isom asked the officer if he needed a lawyer for hitchhiking, the officer answered "No" and continued with the interrogation. We agree with Isom that the officer's response was improper pursuant to Almeida. Although the officer's answer was simple and straightforward, as required by Almeida, it was also evasive and misleading because the questioning that was about to occur was not directed to a hitchhiking offense. The officer should have clarified the reason for the interrogation so there would be no question that any waiver of counsel was made with Isom's full knowledge of the circumstances under which he was being *156 questioned. Unlike Almeida, where the defendant had executed a waiver of rights form prior to asking the question at issue in that case, Isom's question arose during his initial interrogation while he was being given his Miranda rights for the first time. The officer's failure to dispel Isom's possible misunderstanding places in doubt the knowing and intelligent nature of both the initial waiver and any subsequent waiver. Thus, although Isom did not make his admission to Officer Thorpe, but did so in a subsequent interview with Officer Ross, because the Almeida violation had already occurred, Officer Ross did not obtain a valid waiver of Isom's right to counsel. See Traylor v. State, 596 So.2d 957, 966 n. 14 (Fla.1992) ("Once the right to counsel has been invoked, any subsequent waiver during a police-initiated encounter in the absence of counsel during the same period of custody is invalid, whether or not the accused has consulted with counsel earlier"). Therefore, the trial court erred in denying the motion to suppress. Accordingly, we reverse the judgment of convictions and remand for the trial court to grant the motion to suppress.
Reversed and remanded.
ALTENBERND, J., Concurs.
SILBERMAN, J., Dissents with opinion.
SILBERMAN, Judge, Dissenting.
Because I conclude that the trial court correctly denied Isom's motion to suppress, I respectfully dissent.
In reversing, the majority relies upon Almeida v. State, 737 So.2d 520 (Fla.1999). There, the supreme court noted that during his interrogation Almeida asked an "un equivocal [sic] question that was prefatory toand possibly determinative ofthe invoking of a right and which cast doubt on the knowing and intelligent nature of the prior waiver." Id. at 524. The supreme court found that Almeida's question was simple, direct, and susceptible of only a single interpretation, that is, he "very clearly was asking the officer for fundamental information concerning his right to counsel." Id.
Here, after Isom was read the Miranda warnings during the first interrogation, Sergeant Thorpe asked Isom whether he understood that he did not have to talk and could have a lawyer. Isom responded, "Yes sir." After Sergeant Thorpe said "Okay," Isom stated, "But I, I ain't did, I got, I need a lawyer cause I was hitchhiking?" Sergeant Thorpe responded "No"[2] and continued with his questioning.
As the majority notes, Sergeant Thorpe gave a simple and straightforward answer to the question that Isom had asked. The majority does not assert that the answer was untruthful, but it concludes that the answer was evasive and misleading and that Sergeant Thorpe should have clarified the reason for the interrogation and should have dispelled Isom's possible misunderstanding.
I cannot agree that the record supports reversal. At the suppression hearing, Isom testified that he was stopped while walking on an interstate. Isom told Deputy Vleck that he was trying to find a motel. Deputy Vleck said that because of an incident, he and others were looking for a suspect fitting Isom's description. Deputy Vleck also told Isom that he was not supposed to be hitchhiking on the interstate and moved Isom off the interstate.
Isom testified that Sergeant Thorpe then arrived and said he was investigating an incident that had happened that day involving someone fleeing from a vehicle. When Sergeant Thorpe said he wanted to *157 talk with Isom, Isom responded that he did not know anything about the incident. Isom then agreed to give a taped statement.
During his testimony, Isom did not claim any confusion or misunderstanding as to his rights or as to the reason for his interrogation. Instead, he specifically acknowledged that Deputy Vleck and Sergeant Thorpe both told him, before the questioning began, that law enforcement was looking for a suspect that matched his description because of an incident in which the person had fled from a vehicle. He also testified that he understood the Miranda warnings that were given to him and that he had acknowledged to Sergeant Thorpe that he understood his rights. The transcript of the interrogation reflects that Isom asked a specific question, and he received a simple and straightforward answer to that question.
After Isom gave the taped statement, he was told to wait for another officer. Trooper Ross arrived about an hour later. Isom denied that he was given the Miranda warnings by Trooper Ross, but he acknowledged answering Trooper Ross's questions.
Trooper Ross testified at the suppression hearing that when he arrived at the scene, he asked Isom to speak with him and Isom was willing to do so. Isom told Trooper Ross that he had received the Miranda warnings from the sheriff's deputies. Trooper Ross testified that he proceeded to read the Miranda warnings to Isom, and Isom confirmed that he understood his rights. Isom did not request a lawyer or invoke his right to remain silent.
During the interrogation by Trooper Ross, Isom admitted that he was the driver of the vehicle and that he fled from the scene after he had multiple crashes. Isom described how each of the crashes occurred, how he had tried to hide the vehicle, and how he fled and was able to hide until the sheriff's department made contact with him.
The record does not support a conclusion that Isom was deluded or deceived as to his rights, or that Sergeant Thorpe or Trooper Ross exerted a coercive influence. See Almeida, 737 So.2d at 524. In Almeida, the supreme court reiterated that the "police must honor a clear statement invoking a suspect's rights," and the police "must answer a clear question concerning a suspect's rights." Id. at 526. Nothing in the record suggests that Isom did not understand his rights or that he did not willingly speak with Sergeant Thorpe or Trooper Ross. Instead, the record reflects that he knew he was being questioned because he matched the person who had fled.
The law enforcement officers were not required to act as Isom's legal advisors or his personal counselors. See State v. Glatzmayer, 789 So.2d 297, 305 (Fla.2001). Sergeant Thorpe directly answered Isom's specific question; he did not try to override or "steamroll" Isom; and the officers did not engage in "gamesmanship." Id. Isom's question cannot be interpreted as being an unambiguous or unequivocal request for a lawyer, and Sergeant Thorpe did not need to clarify Isom's wishes or to cease the interrogation. See Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); State v. Owen, 696 So.2d 715, 719 (Fla.1997).
The test for determining the admissibility of a confession "is one of voluntariness, or free will, which is to be determined by an examination of the totality of the circumstances surrounding the confession." Traylor v. State, 596 So.2d 957, 964 (Fla. 1992). A trial court's ruling on a motion to suppress is clothed with a presumption of correctness and is given great deference; *158 the evidence and reasonable inferences and deductions from the evidence must be interpreted in a manner most favorable to sustaining the trial court's ruling. See Connor v. State, 803 So.2d 598, 605 (Fla. 2001); Murray v. State, 692 So.2d 157, 159 (Fla.1997); Escobar v. State, 699 So.2d 988, 993-94 (Fla.1997).
Looking at all of the circumstances, there was no evidence of any misconduct by any officer. Isom was not misled, deceived, or lied to, and his statements were voluntarily made. Alternative deductions could reasonably be drawn from the evidence including that Isom may have been "playing the fool" in asking if he needed an attorney for hitchhiking; he may have been "fishing" to find out how much Sergeant Thorpe knew of Isom's activities that day and to decide what information to reveal to Sergeant Thorpe; or he may have indeed thought that he was being questioned because of his hitchhiking. The last seems the least likely in light of his having been told twice that an investigation was being conducted and that he matched the description of a person who had fled.
During the motion to suppress hearing, counsel for the State and for Isom argued about all of the circumstances and the evidence that had been presented, including whether Isom's question was genuine or rhetorical. Unlike the situation in Almeida, from the circumstances here it is not clear that Isom was asking a genuine question rather than a rhetorical question. See Almeida, 737 So.2d at 524. The trial court was in the best position to evaluate the evidence and the inferences and conclusions to be drawn from the evidence. The record supports the trial court's ruling, and therefore, I conclude that no reversible error has been shown. I would affirm the denial of Isom's motion to suppress.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Hitchhiking is a noncriminal traffic infraction. § 316.130(5), (19), Fla. Stat. (1999).