STONE, J.
Louis appeals his convictions for sexual battery and indecent assault upon a child on the ground that his confession was erroneously admitted. We affirm, concluding that the trial court’s finding of a valid waiver of Miranda[1] rights was supported by the evidence notwithstanding that Louis’ native language was Creole.
Louis, age eighteen, had been in the United States for two years and attended a public high school. The victim, age eleven, testified at trial that on multiple occasions, Louis touched her breasts and vagina, and inserted his penis into her vagina. After the victim went to the police, Detective Cubas found Louis at his high school. After informing Louis of the charges against him, Detective Cubas told Louis he wanted to speak to him at the police station. Louis agreed to go and was transported to the station.
At the station, Louis signed a Miranda waiver form. Cubas also recited Louis’ rights before questioning him. Louis told Cubas, in English, that there had been sexual contact between him and the victim, but that the victim was the aggressor. He described how she would take his “dick” out and put it in her “pussy.” He also admitted to several incidents in which the two would “rub together” with their clothes on.
Prior to trial, Louis moved to suppress his statement on the ground that he could not have given a voluntary waiver of Miranda where he did not have an adequate comprehension of the English language. The trial court denied the motion.
Review of a motion to suppress is a mixed question of law and fact. State v. C.F., 798 So.2d 751, 754 (Fla. 4th DCA 2001). We review the trial judge’s application of the law to the court’s factual findings de novo. Id.
*255 Initially, we note that Miranda is implicated only where there is a custodial interrogation. See Dixon v. State, 816 So.2d 172 (Fla. 4th DCA 2002). Here, we conclude that Louis was in custody. There are four factors which guide this determination: “(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave.... ” Mansfield v. State, 758 So.2d 636, 644 (Fla.2000). In this case, Louis was summoned by police while at school and taken to an interrogation room at the police station. He was specifically questioned about the allegations made by the victim and the record fails to reflect that he was ever told he was free to leave. See Pollard v. State, 780 So.2d 1015 (Fla. 4th DCA 2001).
Although we reject the state’s contention that this was not a custodial interrogation, there was, nevertheless, a valid waiver of the Miranda protections.
The state must prove that Miranda was waived by a preponderance of the evidence. Balthazar v. State, 549 So.2d 661, 662 (Fla.1989). The voluntariness of the waiver is a two-part inquiry. The first is whether the waiver was a free choice on the part of the defendant and not the product of intimidation, coercion, or deception. The second is whether the waiver was made with a full awareness of the nature of the right being abandoned and the consequences of the abandonment. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Although the state’s burden in proving volun-tariness is heavier when a defendant claims a language barrier, the standard of proof remains the same. Balthazar, 549 So.2d at 662.
As to the first part of the inquiry, there was competent substantial evidence before the trial court that the waiver was not the product of intimidation, coercion, or deception.
As to the second part of the inquiry, there was competent substantial evidence that Louis had the requisite level of English comprehension to waive Miranda. The record showed that Louis was of average intelligence and suffered from no mental infirmity. He was an adult just shy of his 19th birthday. At the time of the interrogation, he had been in the United States for two years and was attending a public high school where he was taught classes in English as well as Creole. Louis was able to converse with Detective Cubas in English, and he did not need the questions repeated to him and answered the questions.
This case is comparable to Soto v. State, 751 So.2d 633 (Fla. 4th DCA 1999), where we recognized a voluntary waiver of Miranda despite the claims that the defendant did not understand the warnings as delivered in English. There, this court found that the state produced sufficient evidence where the defendant had attended English speaking schools, had communicated with the police in English, and the tape of the conversation itself had demonstrated a voluntary waiver. Id. at 635. Here, as in Soto, both the recording and transcript of the interrogation shows that Louis understood the questions posed to him and was able to respond in English.
In affirming the final judgment, we also reject the argument that Detective Cubas was misleading as to the role of an attorney within the context of Miranda. During questioning, and after Louis had signed a waiver of rights form, Detective Cubas asked Louis if he knew what was an attorney. The transcript shows Louis’ response as: “Attorney? ... Attorney is *256 some lawyer ... make some business.” Detective Cubas went on: “I explained to you that an attorney is somebody that represents you in court. Okay? ... He’s a person that stays in the courtroom and he’s the one who defends you.... He’s the one who speaks for you to the judge ... And you have the right to the presence of the attorney prior to any questioning. Do you understand that?” Louis said, “yes” and the interview continued.
This issue is governed by the supreme court’s decision in Almeida v. State, 737 So.2d 520 (Fla.1999). There, the court stated:
Accordingly, we hold that if, at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer. To do otherwise — i.e., to give an evasive answer, or to skip over the question, or to override or “steamroll” the suspect — is to actively promote the very coercion that Traylor[ v. State, 596 So.2d 957 (Fla.1992)] was intended to dispel. A suspect who has been ignored or overridden concerning a right will be reluctant to exercise that right freely. Once the officer properly answers the question, the officer may then resume the interview.... Any statement obtained in violation of this proscription violates the Florida Constitution and cannot be used by the State.
Id. at 525.
Here, interpreting Louis’ comment as questioning what was an attorney, Detective Cubas’ response was proper under Almeida. Detective Cubas’ answer as to the definition of an attorney was simple and straightforward. He explained the role of an attorney in the context of an attorney’s most prominent role, as the one who would represent Louis in court before a judge. He then explained that prior to questioning, Louis could have an attorney present. It cannot be said that Detective Cubas’ answer was evasive or was designed to “steamroll” Louis.
The instant case is distinguishable from Isom v. State, 819 So.2d 154 (Fla. 2d DCA 2002), relied on by Louis. There, the defendant was apprehended as a suspect in a high speed chase. As the apprehending officer was advising the defendant of the Miranda warnings, the defendant asked, “I need a lawyer cause I was hitch-hiking?” Id. at 155. The officer answered “no” and then continued with the interview. The district court held the officer’s response to be improper under Almeida, deeming it to be misleading. The court held the officer should have clarified the reason for the interrogation so there would be no question that any waiver of counsel was made with the defendant’s full knowledge of the circumstances under which he was being questioned. Id.
Here, it cannot be said that Louis’ rights were not explained simply and directly. Unlike in Isom, the record does not indicate that Detective Cubas misled Louis by his answer. Finding no error or abuse of discretion, and deferring to the trial court’s findings that are supported by the evidence, we affirm.
POLEN, J. and ROSENBERG, ROBERT, Associate Judge, concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).