919 So.2d 546 (2005)
Brett SHULTHEIS, as Personal, etc., Appellant,
v.
Douglas L. GOTLIN, D.O. etc., Appellee.
No. 5D04-2826.
District Court of Appeal of Florida, Fifth District.
December 23, 2005.
Rehearing Denied January 31, 2006.
*547 Gale Ciceric Payne, of Gale Payne & Associates, Fort Lauderdale, for Appellant.
Mark Hicks and Brett C. Powell, of Hicks & Kneale, P.A., Miami, Anne F. Lunsford of Anne F. Lunsford, P.A., Ormond Beach and Jonathon P. Lynn of Stephens, Lynn, Klein, LaCava, Hoffman & Puya, P.A., Fort Lauderdale, for Appellee.
MONACO, J.
The appellant, Brett Shultheis, as personal representative of the estate of his deceased wife, Keely Ann Shultheis, and as parent and guardian of their children, appeals the final judgment rendered after a jury verdict in favor of the appellees, Dr. Douglas Gotlin and Dr. Gotlin's P.A. Ms. Shultheis died tragically during childbirth. Her estate sued her physician, alleging medical negligence on his part. A jury disagreed. We affirm.
Ms. Shultheis went to Parrish Medical Center in Brevard County in labor with twins. Shortly after her admission, a number of her friends and relatives testified that her left leg may have swelled. Several hours later, she complained of shortness of breath, and within a brief time delivered her two babies. A few minutes later, Ms. Shultheis became unresponsive, had no pulse or blood pressure, and died, apparently of a blot clot (more specifically, a pulmonary embolism), that dislodged from a vein in her leg, and traveled to her heart and lungs. Her condition was diagnosed as deep vein thrombosis, or "DVT."
Mr. Shultheis brought suit against Dr. Gotlin, alleging that Dr. Gotlin was negligent in not evaluating and properly treating Ms. Shultheis for DVT, based on the purported swelling of her leg. The appellants theorized that a classic sign of DVT is the swelling of one leg more so than the other. Two of the battle lines drawn in this case were whether there was, in fact, a greater swelling in one of her legs, and whether Dr. Gotlin did or should have done anything about it. The jury sided with the defense in both instances.
*548 Although Mr. Shultheis seeks a new trial on five different grounds, we conclude that only two need further explication. The first concerns whether the trial court abused its discretion by permitting the defense to offer an expert opinion that was purportedly not related by the expert during his deposition. More particularly, Mr. Shultheis asserts that he was ambushed by the testimony of one of the defense experts, a pulmonologist named Dr. Kanarek.
In Tetrault v. Fairchild, 799 So.2d 226 (Fla. 5th DCA 2001), the case principally relied on by Mr. Shultheis in connection with this argument, we reversed and ordered a new trial in a personal injury action in which we concluded that nothing learned in the pretrial discovery could have reasonably put the defense on notice that a particular expert would be called to the stand to render certain medical opinions. The present case, however, does not fall into the "trial by ambush" category that was abhorred in Tetrault.
The autopsy of Ms. Shultheis was silent with respect to whether there was significant swelling in one of her legs. Dr. Kanarek, who read the pathologist's report (but not the pathologist's deposition), and viewed photographs taken at the autopsy, opined at trial that pre-mortem swelling should have appeared at autopsy, if it had existed prior to death, and should have been noted on the autopsy report if the swelling had still been present at that time. His position was based on his opinion that if the extremity was swollen before death, and if the swelling was caused by DVT, he would expect the swelling to be present at the time of the autopsy. Mr. Shultheis asserts that the admission of this testimony constituted reversible error because Dr. Kanarek failed to disclose that opinion with specificity at his deposition. The deposition, however, does not truly support that argument.
When orally reviewing his research notes in response to questions at his deposition from counsel for Mr. Shultheis, Dr. Kanarek, who was called by the defense as an expert to testify on the signs, symptoms and treatment of DVT, gave the following answers:
Q. Let me ask you this, what were these notes part of?
A. Well these were thoughts that were occurring to me while I was writing things, while I was reading it through. What are the issues going to be in the case? Mostly it's to do with that, what are the issues. You know I knew people were going to ask about the TEDS and she died of PE.
What are the risk factors?
Should they have accepted it?
What was the note about the leg?
That is what that is all about, just the issues that would arise in this case.
. . .
Q. Now you meant that at seven o'clock Dr. Gotlin didn't evaluate that?
. . .
Q. Right, that is what I meant at 1900 he didn't evaluate for calf tenderness or Homans or make a comment on edema?
[Objection omitted].
A. Initially I wrote this down and then I put this in later on. I'm not sure why I put that in.
Q. Okay.
A. Then pathologist no comment that one leg was swollen. Pathologist no comment that one leg was swollen i.e., considering PE.
Diagnosis dash unlikely that pathologist would have missed the finding. By *549 which I meant the pathologist would have missed unequal legs.
While it is true that Dr. Kanarek did not specifically explain that any post-mortem swelling would have appeared at the autopsy, the fact that he wrote down and then discussed during his deposition that there was no comment by the pathologist on the autopsy report concerning single-leg swelling should certainly have reasonably put the opposing party on notice that Dr. Kanarek might be called to testify on that subject. See Tetrault, 799 So.2d at 227. Moreover, there appear to have been no further questions at deposition about this note. The appellees cannot be held responsible for the fact that opposing counsel did not further explore this subject during discovery, particularly where it is abundantly clear from other parts of the deposition that Dr. Kanarek was of the opinion that the degree of swelling urged by Mr. Shultheis could not have existed. See Ganey v. Goodings Million Dollar Midway, Inc., 360 So.2d 62 (Fla. 1st DCA 1978), dismissed, 362 So.2d 1053 (Fla. 1978). In any event, we cannot say that the trial court abused its discretion by admitting Dr. Kanarek's testimony in this regard, given the materials discussed during Dr. Kanarek's deposition.
Additionally, we note that the pathologist who actually performed the autopsy testified at trial without objection, as he did at his earlier deposition, that the legs of the decedent were the same size when he examined them at the autopsy. He said that if he had noticed a difference, he would certainly have measured and recorded it. Counsel for Mr. Shultheis cross-examined the pathologist and got him to admit that just because he did not see a difference in leg size during the autopsy did not mean that one leg was not swollen twelve hours earlier. Thus, the issue of leg swelling, or the lack thereof, was one of the significant issues fought over by the parties. The testimony on the significance of the controverted testimony concerning leg size must certainly have been anticipated.
Finally, we note that this case is factually distinct from Dep't of Health & Rehab. Servs. v. J.B., 675 So.2d 241 (Fla. 4th DCA 1996), another case relied upon by Mr. Shultheis. In J.B. a new trial was granted because the expert formed a new opinion after the opposing party had an opportunity to take the expert's deposition. The new opinion was not disclosed to the opposing party until the trial. This truly was an ambush. Here, Mr. Shultheis was made aware of the factual basis for the expert's testimony in advance of trial. Accordingly, we find no abuse of discretion in the admission of this testimony.
The second issue we believe warrants further examination concerns whether the jury should have been required to work what Mr. Shultheis describes as a "marathon 16-hour workday ... where no instruction was given regarding any protocol for breaks or rest." Mr. Shultheis argues that the jury deliberated for thirteen hours after hearing three hours of closing argument. Neither party, however, objected on the record. Mr. Shultheis asserts that a reversal is nevertheless warranted because the error is fundamental.
Generally, a trial court should not act in any way that would appear to coerce any jury to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position. The standard under which we review such an alleged error is whether under the totality of the circumstances a trial judge's actions were coercive. This is especially true where neither party objects. See United States v. Brokemond, 959 F.2d 206, 208 (11th Cir.1992); see also Thomas v. State, 748 So.2d 970, 976 (Fla.1999) (Jury *550 began deliberations at approximately 7:00 p.m. Saturday night and did not recess until after 4:30 a.m. the next morning). Continuing court proceedings into the late evening hours unreasonably and often unnecessarily exhausts jurors and may deny a party effective or meaningful representation of counsel. See Ferrer v. State, 718 So.2d 822, 826 (Fla. 4th DCA 1998), review denied, 728 So.2d 204 (Fla.1998). We certainly do not encourage this procedure.
As a practical matter, however, before we would order a new trial there must be something objective brought to our attention to indicate that jurors were deadlocked, or exhausted, or that they were not actively engaged in constructive deliberations. We would be greatly concerned, for example, if there was evidence that the jurors in this case signaled that they were tired and wanted a recess. See Thomas; Clark v. State, 379 So.2d 97 (Fla.1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981); see also Washington v. State, 758 So.2d 1148, 1153 (Fla. 4th DCA 2000), review denied, 786 So.2d 1192 (Fla.2000). We see nothing of this sort in the record. Given this state of the record, we have to trust the judgment of the trial court in this regard.
We note that a somewhat similar circumstance presented itself to the Florida Supreme Court in Clark. Clark involved a prosecution for first-degree murder, kidnapping and extortion. After the jury deliberated for nine hours, the defense moved to allow the jury to retire from its deliberations. The trial court declined. Two hours later, the defense unsuccessfully renewed its motion. The opinion does not disclose how long after the second motion the jury deliberated before returning guilty verdicts. The Supreme Court affirmed, noting that the defendant "has failed to demonstrate how he was denied a fair trial by an impartial jury on the basis of the length of time the jury deliberated." Id. at 102. Under the circumstances, we find no error in the present case on this basis either.
We have carefully reviewed the other arguments put forward by Mr. Shultheis and find them to be without merit.
AFFIRMED.
SAWAYA and THOMPSON, JJ., concur.