731 So.2d 79 (1999)
Kenya RAMSEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-3239.
District Court of Appeal of Florida, Third District.
April 7, 1999.
*80 Bennett H. Brummer, Public Defender and Harvey J. Sepler, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before GERSTEN, GODERICH, and GREEN, JJ.
GREEN, J.
Pursuant to a jury verdict, the appellant, Kenya Ramsey, was convicted and sentenced for first degree (felony) murder and robbery with a deadly weapon as charged. His sole contention on this appeal is that the trial court erred in not suppressing his police station confession which was made prior to him being given Miranda warnings.[1] We conclude that Ramsey's confession was not the result of a custodial interrogation, hence, the Miranda safeguards were not triggered and therefore, the trial court correctly denied the motion to suppress.
Ramsey and his co-defendant, David Kerlin, were employed at the Alligator Bookstore in Key West, Florida by its owner and ultimate victim in this case Edward O'Connor. On July 30, 1996, O'Connor entered the bookstore to play video games. At the time, he was extremely intoxicated. As O'Connor played video games, Kerlin encouraged Ramsey to hit O'Connor on the head in order to facilitate a robbery. Kerlin even supplied Ramsey with a bat to strike the victim. Ramsey later struck O'Connor twice on the head with the bat. O'Connor fell to the floor and was transported to the hospital where he later died.
When Ramsey and Kerlin telephoned the "911" operator they reported that the victim had sustained head injuries from a fall as the result of a seizure. Thereafter, when the doctors discounted the possibility of the victim sustaining injuries as a result of a fall and stated that the victim had been struck on the head, the police began to investigate the case as a homicide. Upon learning of the homicide investigation from the police, Ramsey and Kerlin voluntarily spoke to the police on various occasions at the hospital, bookstore and police station and provided the police with information as to a possible suspect. They told the police that they had found the victim on the floor in a pool of blood. Ramsey also told the police that he had seen a tall blond male exit the bookstore shortly before finding the victim. The police testified that Ramsey and Kerlin were deemed as mere witnesses during such interviews.
During the last such interview, the police decided to speak to Ramsey and Kerlin separately at the police station. It is undisputed that both Ramsey and Kerlin voluntarily came to the police station. During Kerlin's interview, Kerlin finally informed the police that Ramsey had hit the victim and taken the victim's waist pouch. Kerlin was given his Miranda warnings and his statement was tape recorded.
Meanwhile, Ramsey was being interviewed by Agent Wiener in another room. During his interview, Ramsey was neither threatened or handcuffed and was given food and water. He was never told that he was not free to leave at any time. Agent Weiner testified that because he began to believe that some of Ramsey's statements were evasive and/or untruthful, he decided to "bluff" and tell Ramsey that Kerlin had told police that Ramsey had committed the crime. At the time, Agent Wiener had not learned that Kerlin had in fact implicated Ramsey. In response to the officer's "bluff", Ramsey continued to be evasive.
Agent Wiener thereafter left the room and learned for the first time that Kerlin had in fact implicated Ramsey. Agent Wiener then returned to the interview room and provided specific details of Kerlin's *81 confession to Ramsey. It was at this point that Ramsey confessed. Agent Wiener then read Ramsey his Miranda warnings and later tape recorded his confession. At trial, the key evidence against Ramsey was his confession.
On this appeal, Ramsey maintains that when the police confronted him with his co-defendant's evidence implicating him, he was entitled to be given Miranda warnings where such evidence was likely to elicit a confession from him and no reasonable person in his position would believe that he or she was free to leave. We do not believe that the Miranda safeguards were triggered where Ramsey was voluntarily at the police station and not subject to custodial interrogation at the time of his confession.
It is axiomatic, of course, that Miranda warnings are implicated only when an individual is undergoing actual custodial interrogation by the police. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602; McNeil v. Wisconsin, 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (stating that "[w]e have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than `custodial interrogation'[.]"); Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (holding that "[t]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."). The mere fact that an individual is questioned at the police station does not necessitate a finding that the individual is in custody. See Roman v. State, 475 So.2d 1228, 1231 (Fla. 1985). The state correctly points out that in determining whether a suspect is "in custody" for purposes of Miranda, a court must examine the extent of the restraints placed upon the suspect during interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody. See Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). It is absolutely undisputed in this case that up until the time that the police confronted Ramsey with the details of his co-defendant's statements implicating him, Ramsey was not in custody and was at the police station voluntarily speaking to the police without any coercion or intimidating circumstances. Ramsey, nevertheless, urges that at the point he is confronted with the incriminating statements made by his co-defendant, his otherwise voluntary police encounter became custodial in nature since it was likely to elicit his confession. We disagree.
As here, in the absence of any indicia of coercion or intimidating circumstances, police questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into a custodial interrogation. See generally Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (finding that asking potentially incriminating questions does not convert encounter into a seizure); State v. Poole, 730 So.2d 340 (Fla. 3d DCA 1999) (holding that "in the absence of any indicia of coercion or intimidating circumstances, police questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into an unlawful seizure or detention."). Here, the moment the police relayed the co-defendant's statements to Ramsey, Ramsey spontaneously confessed. Because Ramsey was not subject to custodial interrogation at the time, the police were not required to Mirandize him. Hence, we conclude that the trial court properly denied the motion to suppress.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).