780 So.2d 1015 (2001)
Wanda M. POLLARD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-4177.
District Court of Appeal of Florida, Fourth District.
March 28, 2001.
*1016 Helene Hvizd Morris of Helene Hvizd Morris, LLC, West Palm Beach, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Wanda Pollard timely appeals after a jury found her guilty of first degree murder and home invasion robbery. We reverse her conviction and life sentence and remand this case for a new trial.
The victim died as the result of strangulation and blunt trauma involving the use of fists, hands, stomping, and another blunt instrument. Following an anonymous tip, police discovered that at least three people were involved in the crime. One of these men, Doug Kelsey, who was never charged, implicated Pollard. He showed police various objects that he said Pollard, Terrance Jones, and Michael Woulfe had taken from the victim's home. These objects included the victim's wallet, social security card, fishing pole, and other personal documents and effects.
Thereafter, police, intending to pick up Pollard for questioning, performed a traffic stop on a vehicle in which Pollard was a passenger. The detective told the driver he wanted to speak with Pollard about what happened in "Fruity Acres" (where the victim was killed), and at some point[1] asked the driver to leave. Pollard entered the police vehicle. After she became emotional, he asked her to come with him to the police station, which she did. The detective claimed Pollard was more than willing to go to the station, but never told her that she did not have to or that she could leave.
At the station, police placed Pollard in a restricted-access interview room, where she gave two taped statements. In the first statement, given before police read her Miranda[2] warnings, she explained that on the night of the murder she was at the victim's house drinking beer with him. She said she left the house when Woulfe and Jones arrived, and that the two later told her they had killed the victim. She said she saw only the safe that Woulfe and Jones apparently took from the victim's house.
In the second taped statement, given just over two hours later and after police had read her Miranda warnings, she stated that she, Jones, and Woulfe all drove together to the victim's house. She said that Jones and Woulfe told her they planned to hurt the victim. She explained Woulfe and Jones entered the victim's house, threw him to the ground, tied his hands behind his back, and began kicking him. They wrapped something around his neck and she heard a gurgling sound. She claimed Woulfe and Jones forced her to go with them and stay at the house while they committed the crime. When the three left the house, Pollard carried out a fishing pole.
At trial, her attorney sought to suppress the first statement on the ground that no Miranda warnings were given. The state claimed that it needed to introduce the first tape so that the jury could see the discrepancy in both her statements.
At the suppression hearing, the key detective admitted that when he picked Pollard up, she was a suspect in the crime. However, he testified that she was not forced to accompany him to the police station and once there she was free to leave. Pollard, on the other hand, testified *1017 that she felt she had to go to the station and could not leave once there. The trial court denied the motion to suppress on the ground that "this was not a custodial interrogation, partly ... based on Ms. Pollard's unique background. She certainly noticed the difference when she is under arrest and what's not...."
Woulfe later testified that Pollard told him and Jones that she knew someone they all could rob. He testified he did not force Pollard to go to the victim's house on the night of the murder. He explained that the plan that night was that Pollard would let Woulfe and Jones into the victim's house where they would commit the robbery. Kelsey testified that Pollard needed money and planned the robbery with Jones and Woulfe.
Pollard was convicted of first degree murder and home invasion robbery, as charged, and sentenced to life in prison. This appeal followed.
The supreme court has clarified that Miranda warnings need to be given only when the person is in custody. Ramirez v. State, 739 So.2d 568 (Fla.1999), cert. denied, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). When determining if a defendant is in custody for purposes of Miranda, the test is whether "a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest." Id. at 573. To determine whether a reasonable person in the suspect's position would consider himself in custody, the court should consider:
(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.
Id. at 574 (emphasis supplied).
Under these standards, the record reflects Pollard was in custody when she made her statements for the purposes of Miranda. She was interrogated by detectives at the police station in a restricted-access room and was never told she was free to leave; she was questioned about the murder and robbery of the victim; and police suggested to her that she was a suspect. Because she was not read Miranda warnings before she made her first statement, we hold this statement should have been suppressed.
This conclusion then leads to a harmless error analysis. "The erroneous admission of statements obtained in violation of Miranda rights is subject to harmless error analysis." Caso v. State, 524 So.2d 422, 425 (Fla.1988). Error is not harmless if there is any reasonable doubt that the error affected the verdict. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
Admission of the first statement cannot be considered harmless because it became a focal point of the trial. As the state argued to the court, the first tape was essential. The state then repeatedly argued to the jury in closing that by not telling police in her first statement that she was forced to partake in the crime, Pollard must have been lying when she said in the second statement that Wolfe and Jones forced her to help them. This fact, if true, may have had the effect of negating her claims of duress. Because there is a reasonable doubt as to whether introduction of the first statement contributed to the jury's guilty verdict, we must reverse. Cf. Mansfield v. State, 758 So.2d 636, 645 (Fla.2000); Alvord v. Dugger, 541 So.2d 598, 601 (Fla.1989).
REVERSED and REMANDED for a new trial.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] The record is unclear whether police asked the driver to leave before or after Pollard entered the police vehicle.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).