964 So.2d 247 (2007)
William MEREDITH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1141.
District Court of Appeal of Florida, Fourth District.
September 12, 2007.
*248 Mark Orr, Fort Pierce, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.
*249 TAYLOR, J.
The defendant, William Meredith, appeals his conviction and sentence for lewd or lascivious molestation of a child. He argues two points on appeal: (1) that the trial court erred in denying his motion to suppress statements made to police without Miranda warnings, and (2) that the trial court erred in allowing the state to file an amended information on the day of trial. Because the trial court properly concluded that the defendant was not in custody at the time he was questioned and, thus, was not required to be given Miranda warnings, we affirm on the first point. We also affirm as to the defendant's second point for the reasons discussed below.
The defendant was charged by information with one count of lewd or lascivious molestation-offender over 18, victim under 12. The information alleged:
August 01, 2004 William Vincent Meredith did, being 18 years of age or older, intentionally touch in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of A.A., a person less than 12 years of age, or did force or entice A.A. to so touch the defendant, in violation of Florida Statute 800.04(5)(b); . . .
Before trial, the defendant moved to suppress his statements to police. He contended that he made the statements during a custodial interrogation without the benefit of the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
At the suppression hearing, Detective Todd Finnegan of the Indian River County Sheriff's Office testified that he called the defendant on the telephone, told him that his name had come up in an investigation, and asked him to come to the sheriff's office at his convenience to discuss the matter. The defendant asked what it was about, but the detective said he did not want to discuss it over the phone. The detective told him that he was not "under arrest or anything."
The defendant arrived at the station a few hours later. He met Detective Finnegan in the front lobby and was escorted by the detective to an interview room. He had to get "buzzed in" by the secretary before he could proceed down the hallway to the interview room. The detective was the only officer present in the interview room. He testified that the door was unlocked and that he did not sit between the defendant and the door; he sat off to the side.
The interview was videotaped without the defendant's knowledge. At the beginning of the interview, Detective Finnegan told the defendant, "All right, man. I just want to let you know you're not under arrest. I appreciate you coming in here to talk to me. This is strictly voluntary." The detective then told the defendant that his ex-girlfriend's younger brother had made allegations that the defendant had engaged in some inappropriate touching with him and that the detective just wanted to get the defendant's "side of the story." The detective told the defendant that he had spoken to the boy, the boy's parents, and the Department of Children and Families. He told the defendant that the boy had described various incidents wherein the defendant had touched the boy's penis and the boy had touched the defendant's penis. The defendant acknowledged that he had occasionally touched the boy's penis, but explained that he did so in response to the boy's grabbing his penis while they were wrestling or playing "show and tell."
The detective used a "casual approach" in questioning the defendant, often calming him down when he "was a little nervous" *250 and assuring him that he was not accusing him of being a child molester but simply trying to get his "standpoint" so he would "have something to explain to the family." At one point, the detective asked the defendant if he needed counseling to sort out his possible attraction to young boys. After sternly warning the defendant not to let this happen again, the detective ended the interview and again told the defendant that he appreciated his coming in. The defendant then walked out of the station. A few hours later, the detective secured an arrest warrant for the defendant.
The defendant testified that he did not feel he was free to leave for several reasons. He said that the detective, who sat between him and the closed door, never told him that he was free to get up and go. Furthermore, he could not have found his way back to the lobby without the detective's help, because the interview room was at the end of a long hallway, with a few turns along the way. He also thought that because he initially had to be "buzzed in," he would have to be "buzzed out" to leave. The defendant said that he did not feel free to leave in light of the questions he was being asked, and that he felt he was under the detective's control and domination the entire time.
The trial judge denied the motion to suppress. He characterized the interview as a polite conversation. He found that the defendant's testimony, that he did not feel free to leave because he had gone down various hallways and was in a back room, was not credible. The trial court also found that there was no deception used to get the defendant to make his statement. He concluded that the defendant was not in custody and thus no Miranda warnings were required.
Miranda warnings are required only when an individual is undergoing custodial interrogation. The Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. 1602. Determining whether a person is in custody for Miranda purposes is based on how a reasonable person in the suspect's situation would perceive his or her circumstances. The ultimate inquiry is whether "a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest." Ramirez v. State, 739 So.2d 568, 573 (Fla.1999).
The Miranda custody test involves two discrete inquiries: first, what were the historical facts and circumstances surrounding the interrogation; and second, given those circumstances, "would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). The first inquiry is factual, and we must accord the trial court's findings of historical fact a presumption of correctness. Id. But, the second inquiry requires us to apply the controlling legal standard to those facts and conduct an independent de novo review. Id.; Schoenwetter v. State, 931 So.2d 857 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 587, 166 L.Ed.2d 437 (2006); Connor v. State, 803 So.2d 598, 606 (Fla.2001); State v. Weiss, 935 So.2d 110, 116 (Fla. 4th DCA 2006).
The Miranda custody inquiry is an objective test that involves the consideration of four factors:
"(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of the *251 interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning."
Mansfield v. State, 758 So.2d 636, 644 (Fla.2000) (quoting Ramirez, 739 So.2d at 574).
In this case, the above factors weigh against a finding of custody. The detective contacted the defendant by telephone and requested him to come to the sheriff's office at his convenience to discuss an investigation. The defendant drove himself to the sheriff's office and entered the building of his own volition. He met with the detective in an interview room away from the public area. The detective explained that his purpose in inviting the defendant to the office was to give him an opportunity to respond to a child's report of inappropriate touching. That the interrogation occurred in the inherently coercive environment of the sheriff's office did not transform the otherwise non-custodial interrogation into a custodial one. See Roman v. State, 475 So.2d 1228, 1231-32 (Fla.1985) (citing Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)). As to the manner of the interrogation, the record shows that only one detective was present during the interrogation and that the interview was conducted in a casual and conversational tone, lasting less than an hour.
The defendant argues that being confronted with the victim's accusation of molestation is a circumstance that militates strongly toward the conclusion that he was in custody. We agree that this factor would have contributed to a reasonable person's perception of custody, particularly here, where the defendant was confronted with details concerning how, when, and where the molestation allegedly occurred. See Mansfield v. State, 758 So.2d 636, 644 (Fla.2000) (holding that the fact that the defendant was confronted with evidence strongly suggesting his guilt was a factor showing that the defendant was in custody for Miranda purposes).
Some courts have observed, however, that the significance of this factor may be diminished if the police do not express their belief in the suspect's guilt or do nothing to refute the suspect's offered explanation of innocence. See Stansbury v. California, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); State v. Pitts, 936 So.2d 1111, 1128 (Fla. 2d DCA 2006).
In Stansbury, the United States Supreme Court stated:
The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.
511 U.S. at 325, 114 S.Ct. 1526.
In Pitts, the Second District Court of Appeal reversed suppression of the defendant's statement, at least in part, because of the "police attitude" factor. There, the defendant was summoned to the police station for questioning about the abduction and murder of two missing men. The defendant had pawned property owned by one of the missing men. Police Captain Martin confronted the defendant with this evidence and told him that another suspect, *252 T.J., had accused the defendant of killing the victims. Discussing the impact of this confrontation factor on the Miranda custody issue, the court stated:
Martin did not specifically say that he believed the accusation made by T.J. was true. That circumstance would tend to lessen the impact of the accusation on a reasonable person in Pitts' situation. The indirect manner in which the accusation was presented to Pitts would also suggest to such a reasonable person that the police were not prepared to take Pitts into custody based on the accusation.
Pitts, 936 So.2d at 1128.
The court noted that although Captain Martin told the defendant of his suspicion that the defendant was "there," the officer's questions and comments did not make it apparent to the defendant that he was the prime suspect. Further, the court noted that when the defendant offered an innocent explanation of his involvement in pawning the victims' property and fleeing from the police, the officers did not confront him with anything to refute this explanation. The court reasoned that "[i]n such circumstances, a reasonable person in his position would not understand himself to be in custody." Id. at 1129 n. 9.
Here, Detective Finnegan's friendly demeanor and low-key interrogation tactics, combined with his consolatory tone in telling the defendant, "relax, I'm not calling you a child molester," might have led a reasonable person to believe that he would remain free to leave. Like the police captain in Pitts, the detective in this case did not challenge the defendant's innocent explanations for actions that made him appear culpable. As stated above, the manner of the interrogation is one of the factors courts are instructed to consider in determining whether a reasonable person in the defendant's circumstances would believe that he or she was in custody. See Pitts, 936 So.2d at 1128; see also State v. Rodriguez, 785 So.2d 759, 761 (Fla. 3d DCA 2001) (holding that, in the absence of any indicia of coercion or intimidating circumstances, being confronted by the police with incriminating evidence did not convert the otherwise consensual encounter into a custodial interrogation); Ramsey v. State, 731 So.2d 79, 81 (Fla. 3d DCA 1999); State v. Poole, 730 So.2d 340, 342 (Fla. 3d DCA 1999) (holding that non-coercive police questioning about criminal conduct or activity alone does not convert an otherwise consensual encounter into an unlawful seizure or detention).
As to the final factor, "whether the suspect is informed that he or she is free to leave the place of questioning," the defendant testified that he was not specifically informed that he was free to leave at any time. The record does not refute this. However, before the defendant came to the sheriff's office, the detective informed the defendant that he was not under arrest. Then, after he arrived there and before the interview began, the detective again told him that he was not under arrest and that his presence at the sheriff's office was "strictly voluntary." As the supreme court stated in Roman, "a reasonable person might be more likely to think he is not in custody if specifically told he is not under arrest." 475 So.2d at 1231. Though a better case is made for non-custodial status when a suspect is explicitly informed that he is free to leave a police station, Roman suggests that a reasonable person who is told from the outset that he is not under arrest and is there on a voluntary basis would understand that he was free to leave at any time.
In Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the Court stated:

*253 [The defendant] came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½ hour interview[,] respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."
In sum, after examining the circumstances of this case and considering all the Ramirez factors, we conclude that the defendant was not in custody for purposes of Miranda when he made the statements to the detective at the sheriff's office. Therefore, the trial court did not err in denying his motion to suppress the statements.
We disagree with the defendant's final argument that his due process rights were violated when the trial court permitted the state to file an amended information, which added a second count on the day of trial. The amendment essentially divided the allegations of the original information, that the defendant touched the child or induced the child to touch him, into two separate offenses.[1] Even if we were to find that the defendant did not waive this issue by electing to proceed to trial on both counts after being offered a continuance and separate trial on the second count, we conclude that no prejudice has been shown.
Affirmed.
STEVENSON, J., concurs.
POLEN, J., dissents with opinion.
POLEN, J., dissenting.
I respectfully dissent. As to appellant's claim the trial court erred in denying his motion to suppress statements he made to Detective Finnegan, I would reverse. The statements, notwithstanding Finnegan's repeated assurances that appellant was not under arrest, were recorded without appellant's knowledge or consent. He had been summoned to the police station by the detective's telephone call, wherein he was told he could not discuss the matter or even why they wanted to talk to him over the phone. Meredith's unrebutted testimony was that he had to be "buzzed in" to the area where he first met Finnegan, and was then questioned in an interrogation room. He testified that he was never told he was free to leave, and believed he could not without being "buzzed out." Finally, while Finnegan's strategy was to downplay the seriousness of the matter,[2] he was clearly confronting Meredith with accusations of the child victim concerning alleged inappropriate touching.
*254 Considering the factors set forth in Mansfield v. State, 758 So.2d 636 (Fla. 2000) (quoting Ramirez v. State, 739 So.2d 568 (Fla.1999)), I would hold it reversible error to have denied appellant's motion to suppress his un-Mirandized[3] statements, and remand for further proceedings.
NOTES
[1] The second amended information read;

(A) Ct. 1. LEWD OR LASCIVIOUS MOLESTATIONOFFENDER 18 OR OLDER, VICTIM UNDER 12
On or Between August 01, 2004 through November 30, 2004, William Vincent Meredith did, being 18 years of age or older, intentionally touch in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of A.A., a person less than 12 years of age, in violation of Florida Statute 800.04(5)(b);
(A) Ct. 2. LEWD OR LASCIVIOUS MOLESTATIONOFFENDER 18 OR OLDER, VICTIM UNDER 12
On or Between August 01, 2004 through November 30, 2004, William Vincent Meredith did, being 18 years of age or older, force or entice A.A., a person less than 12 years of age, to intentionally touch in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of the defendant, in violation of Florida Statute 800.04(5)(b); . . .
[2] In fact, Finnegan allowed appellant to leave the station, and then obtained an arrest warrant a few hours later.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).