ON MOTION FOR REHEARING
 

 DAMOORGIAN, J.
 

 Upon consideration of the State’s motion for rehearing, we deny rehearing but withdraw our December 7, 2011 opinion and substitute the following in its place.
 

 Sasha Bowen timely appeals his conviction and sentence for first-degree murder. Bowen raises four issues on appeal. First, he contends the trial court erred when denying his motion for mistrial based on the prosecutor’s closing arguments. Second, he submits the trial court erred in denying his motion to suppress statements he made to the police. Third, he asserts the trial court erred in admitting a text message exchange into evidence. Fourth, he argues the trial court erred in denying his motion for judgment of acquittal. We find merit to Bowen’s second point on appeal and reverse. We affirm the remaining points raised on appeal without discussion.
 

 Before trial, Bowen moved to suppress all statements made to law enforcement during them investigation into the shooting death of Arthur Tobin. At the hearing on the motion to suppress, the following facts were adduced: The morning after the murder, detectives went to Bowen’s home and separately spoke to Bowen and his girlfriend.
 
 [1]
 
 The detectives were looking
 
 *243
 
 for associates of co-defendant Jose Gordon, who was on scene when the shooting occurred and was already in police custody. One detective spoke with Bowen’s girlfriend, who indicated that Bowen might know more about the homicide than he was stating. That detective relayed this information to another detective who was speaking with Bowen. Bowen’s girlfriend then voluntarily left for the police station with two detectives to speak with the lead investigators. She had Bowen’s house and car keys when she left. When the detective told Bowen about his girlfriend’s statement concerning his possible knowledge of the homicide, Bowen responded that he knew about the shooting. He then agreed to go to the station to speak with detectives. He was taken to the station, but was never handcuffed.
 

 Once at the station, Bowen waited unaccompanied in the break room. The detective checked in on him a few times and advised that the interview with his girlfriend was still being conducted. Bowen did not ask for his parents or a lawyer. He was later escorted to an eight by six interview room with one steel exit door containing a dead bolt, where two detectives spoke with him. The detectives had information that Bowen may have been involved in the murder based on his girlfriend’s statements to them. One of the detectives acknowledged Bowen was a suspect or a person of interest. They interviewed him and obtained two recorded statements.
 

 During the first statement, Bowen was not advised that he was under arrest or in custody. However, the detectives admitted at the hearing that Bowen was not going home that night. In addition, he was never told he was free to leave. At first, they questioned Bowen about how he knew Gordon and Derek Martin. — co-defendants who were later charged in the same indictment. Then they began questioning Bowen about the murder. The detectives confronted Bowen with the fact that Gordon was in custody. He was also confronted with the detectives’ knowledge of his whereabouts prior to the murder. He was asked if he had been hanging out with Gordon that night, and about a cut above his eyebrow. Bowen alleged that he had stopped by Gordon’s house to say hello and then went home. He claimed the cut on his eyebrow was from hitting a cabinet. The detectives insisted that it “would be so much easier” if Bowen told them who he had been with and where he had actually been.
 

 They accused him of leaving Gordon on the scene, and suggested that Gordon had gotten Bowen and Martin involved. Bowen denied involvement. When detectives confronted him with their theory that the homicide had resulted from a robbery that went wrong and his participation, Bowen stated “Straight up.... I need a lawyer.” The interview continued, whereupon he made a statement that he was at the scene of the crime but had nothing to do with it. At the conclusion of the first statement, Bowen was placed under arrest.
 

 Before the second statement, Bowen was read his
 
 Miranda
 
 rights, after which he invoked them. The trial court concluded that “[Bowen] was not in custody for the purposes of
 
 Miranda
 
 until he unequivocally invoked his right to counsel” during the first statement and suppressed all statements made after that point. The statements made before the invocation were introduced at trial. After a jury trial, Bowen was found guilty of murder in the first degree, and this appeal followed.
 

 The Florida Supreme Court has
 
 *244
 
 clarified that Miranda
 
 [2]
 
 warnings need to be given only when the person is in custody.
 
 Ramirez v. State,
 
 739 So.2d 568, 573 (Fla.1999),
 
 cert. denied,
 
 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). “The question of whether a suspect is in custody is a mixed question of law and fact.”
 
 Ramirez,
 
 739 So.2d at 574. “The ‘in custody’ requirement under
 
 Miranda
 
 is subject to
 
 de novo
 
 review, accepting the court’s factual findings if supported by competent, substantial evidence.”
 
 D.B. v. State,
 
 34 So.3d 224, 226 (Fla. 4th DCA 2010) (citations omitted).
 

 The test to determine custody for
 
 Miranda
 
 purposes is whether “ ‘a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with actual arrest.’ ”
 
 Meredith v. State,
 
 964 So.2d 247, 250 (Fla. 4th DCA 2007) (quoting
 
 Ramirez,
 
 739 So.2d at 573). Courts consider four factors when making this determination:
 

 “(1) the manner in which the police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his [or her] guilt; and (4) whether the suspect is informed that he or she is free to leave.... ”
 

 State v. C.F.,
 
 798 So.2d 751, 754 (Fla. 4th DCA 2001) (quoting
 
 Mansfield v. State,
 
 758 So.2d 636, 644 (Fla.2000)).
 

 Applying the four-part test to our facts, we conclude that Bowen was “in custody” when he made his statements at the police station. He was interrogated by detectives in a restricted access interview room. The purpose of the interview was to obtain incriminating responses, and the interview was conducted in an adversarial manner. For example, before Bowen exercised his right to counsel, detectives confronted Bowen about his whereabouts on the night of the murder and their accusations as to his involvement with the murder. Finally, Bowen was never told he was free to leave, and the detectives admitted at the hearing on the motion to suppress that Bowen was not free to go home that night.
 

 Under the totality of the circumstances, a reasonable person in the same position would not believe he was free to leave.
 
 See Pollard v. State,
 
 780 So.2d 1015, 1017 (Fla. 4th DCA 2001) (holding that defendant was “in custody” when she made her statements because she was interrogated in a restricted-access room, she was never told she was free to leave, she was questioned about the murder and robbery of the victim, and police suggested to her that she was a suspect). Thus, Bowen was “in custody” at the start of the questioning in the interview room, and
 
 Miranda
 
 warnings were required. The failure to provide them required suppression of all statements made in the official interview room. Although the trial court articulated the proper four-factor test, it erred by determining that Bowen was not “in custody” for
 
 Miranda
 
 purposes until he exercised his right to counsel during the interrogation.
 

 “ ‘The erroneous admission of statements obtained in violation of
 
 Miranda
 
 rights is subject to harmless error analysis.’ ”
 
 Pollard,
 
 780 So.2d at 1017 (quoting
 
 Caso v. State,
 
 524 So.2d 422, 425 (Fla.1988)). Although the State has not argued that the failure to give the
 
 Miranda
 
 warnings was harmless, we have conducted an independent review for harmlessness.
 
 See
 
 § 924.33, Fla. Stat. (2011) (“No judgment shall be reversed unless the appellate court is of the opinion,
 
 *245
 
 after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.”). Error is not harmless if there is any reasonable possibility that the error affected the verdict.
 
 See State v. DiGuilio,
 
 491 So.2d 1129, 1139 (Fla.1986). Bowen’s exculpatory statements made to police that were admitted at trial were not harmless. In his statements to police, Bowen denied involvement in the shooting. In contradiction to those statements, the evidence at trial indicated that not only was Bowen present, but he was the shooter. Moreover, jailhouse phone calls between Bowen and his parents were also introduced at trial wherein he admitted being present during the crime. We conclude that there is a reasonable possibility that the change in Bowen’s story was considered by the jury and contributed to its verdict. Accordingly, we reverse and remand for a new trial.
 

 Affirmed in Part; Reversed in Part and Remanded.
 

 WARNER and GERBER, JJ., concur.
 

 [1]
 

 . Bowen's girlfriend is also sister to co-defendant Derek Martin.
 

 [2]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).